**Joseph C. BEATY, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–281A38.**

Court of Appeals of Indiana, First District.

June 18, 1981.

Rehearing Denied July 22, 1981.

Nile Stanton, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

ROBERTSON, Judge.

The defendant-appellant Beaty appeals his conviction of theft, *Ind.Code* 35–43–4–2. Because we reverse it will only be necessary to address the issue relating to the sufficiency of the evidence.

A review of the facts favorable to the State shows that Officer Cramer of the Indiana State Police had occasion to observe a green pick-up truck following a white pick-up truck at about 40 to 50 miles per hour on a road in Hendricks County, Indiana. When the green truck improperly passed the white truck on a curve, Cramer noticed the lack of a bumper or license plate on the white truck. Cramer got into position to stop the green truck and then ordered the white truck to stop also. Cramer approached the white truck and asked the driver, later identified as Ricky Hardymon, to produce his driver's license and vehicle registration and bring them to the police car. Cramer then went to talk with Beaty, the driver of the green truck. Beaty showed Cramer his driver's license. Cramer

allowed Beaty to remain in the green truck and returned to the white truck only to discover that Hardymon had fled on foot. He noticed that the white truck's ignition was hanging loose from the dashboard. Cramer then returned to Beaty, searched and then handcuffed him but did not arrest him, and placed him in the police car. Cramer suspected both vehicles were stolen when he noticed that both had broken window latches. Cramer searched the glove compartment of the green truck and found a vehicle registration for that truck made out to a Darla Sanders. Other papers bearing Hardymon's name were found in the same place. Cramer asked Beaty if he knew Hardymon and if he knew who was driving the white truck. Beaty gave a negative reply to both questions.

Cramer had both trucks impounded and released Beaty. A check revealed the white truck was stolen. When Sanders came to claim her green truck she acknowledged that Beaty had permission to use the truck. She also stated that she and Hardymon lived together and that Beaty lived in a house behind them. She also said Beaty and Hardymon knew each other. Cramer also testified that the road the trucks were on eventually led to the property owned by Beaty, about seven miles away. There was a steel building on that property large enough to hold several vehicles.

Hardymon was arrested for the theft of the white truck and pled guilty. Cramer testified that Hardymon told him that he stole the white truck to get parts to repair the green truck, that he knew Beaty; that Beaty did not know that the white truck was stolen; and, that Hardymon intended to give Beaty the white truck when he was finished with it. At trial, Hardymon testified as a State's witness and stated that he had left Sanders three or four days prior to the incident and that Beaty had nothing to do with stealing or stripping the white truck. He also said that at that time he was on his way to abandon the white truck and he did not know it was Beaty in the green truck that passed him.

Our standard of review is well defined:

This Court will not weigh the evidence or resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. A conviction must be affirmed, if having applied the rule, there is evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt.

\* \* \* \* \* \*

We recognize the rule that we may not weigh the evidence and may only review that evidence most favorable to the state to determine, on a sufficiency of the evidence question, whether we shall affirm or reverse the judgment of the trial court. Such appellate duty, of which we take cognizance, in far too many cases requires that we probe and sift the evidence. Thus, if as a result of our probing and sifting the evidence most favorable to the state, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be sufficient to establish guilt beyond a reasonable doubt. This we are not inclined to do for to assume such a judicial posture, neglecting our appellate responsibility, would reduce the appellate process to an exercise in impotent and meaningless futility. (Citations omitted.)

*Holtel v. State*, (1972) 155 Ind.App. 1, 4, 290 N.E.2d 775, 776.

There was evidence to establish that Hardymon and Beaty knew each other and that Beaty had a building large enough to hide stolen vehicles. Once past this point we are of the opinion that the evidence is deficient of the legally required standard of proving guilt in a criminal case, in that it was not

proven beyond a reasonable doubt that Beaty "*knowingly* or *intentionally* exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use" as defined by IC 35–43–4–2. (Emphasis added).

Additionally, when reviewing a conviction based upon circumstantial evidence it has been held:

It is enough to recognize that our basic standard of review is the rule in all sufficiency questions, which questions are ones of law for this court which we have a duty to decide. Over the years, this process of deciding these questions has given rise to two well-established principles which are not in dispute. First, where there are two reasonable inferences arising from the circumstantial evidence in a case, one of guilt and another of innocence, it is not the duty or right of this court to reverse simply because we might believe the circumstances do not exclude every reasonable hypothesis of innocence. Second, a reasonable inference of guilt, sufficient to base a conviction upon, must be more than a mere suspicion conjecture, conclusion, guess, opportunity, or scintilla. (Citations omitted).

*Ruetz v. State*, (1978) 268 Ind. 42, 51, 373 N.E.2d 152, 157.

While good cause may have existed for suspicion of Beaty in the theft of the white truck, the proof at trial did not go beyond that point.

Reversed and remanded for any further action not inconsistent with this opinion.

NEAL, P. J., and RATLIFF, J., concur.